IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Marriage of | No. 84039-8-I |
| KELSEY A. NUNLEY, | DIVISION ONE |
| Respondent, | |
| and | UNPUBLISHED OPINION |
| RICHARD NUNLEY, | |
| Appellant. | |

SMITH, A.C.J. — Kelsey Green[1] and Richard Nunley were married for about four years before Kelsey filed for dissolution in December 2020.  The parties disputed the valuation and appropriate division of some of their assets.  The trial court awarded Kelsey the marital home and ordered her to pay an offsetting monetary award to Richard.  Both parties requested attorney fees, which the court denied.  Richard moved for clarification and reconsideration of the final dissolution decree, requesting that the court attribute a discrete value to the marital home to which it had provided a range of values for in the dissolution findings.  The court nominally denied Richard's motion for reconsideration, but then adopted a value contained in Richard's trial exhibits, lower than the previous range.  Richard appeals, contesting the court's home valuation.  We conclude

_____

[1] At the time of dissolution, Respondent's name was Kelsey Nunley but she is now known as Kelsey Green.  For the sake of clarity, we refer to the parties by their first name.

Citations and pin cites are based on the Westlaw online version of the cited material.

that the trial court did not abuse its discretion in dividing the parties' assets. However, because the trial court failed to provide sufficient findings of fact to develop an adequate record for appellate review of its denial of attorney fees, we vacate the provision in the order denying fees and remand.

FACTS

Kelsey and Richard Nunley married in June 2016 and separated about four years later, in December 2020. Richard had worked at Costco since 2007 and had accrued $44,765 in his 401(k) retirement account when the parties married. The account grew to $143,996 by the time the parties separated. At the time of their dissolution trial in March 2022, Richard was earning about $64,000 annually.

Kelsey, on the other hand, entered the marriage without any retirement savings. Two years later, however, she was hired as a firefighter by the Seattle Fire Department. When the parties separated, Kelsey's deferred compensation plan had a value of $37,279. She also has a pension via the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) in which she is not yet vested that was valued at $21,006 when the parties separated. At the time of trial, Kelsey was earning about $112,000 annually.

In August 2019, the parties purchased a home in Covington for $273,000, taking out a loan of $264,810 in the process. Kelsey's parents gifted the couple $10,000 to put toward the down payment. In November 2020, in anticipation of their separation, the parties hired a realtor to prepare an estimate of net

proceeds if they sold the house. The realtor estimated the house's value to be $295,000.

The parties separated the following month and Kelsey filed a petition for dissolution, which Richard joined. At filing, neither party was represented by counsel. A few months later, however, Richard withdrew his joinder and both parties obtained representation.

The parties agreed to trial by affidavit and stipulated to the admission of both parties' exhibits as evidence. Though they agreed that the Covington house was community property, they disputed its value and how it should be divided. Kelsey argued that the home should be appraised at $295,000, consistent with the realtor's estimate.[2] Richard contended that the house should be valued as of the date of the dissolution trial rather than the date of the parties' separation. He suggested a value of $430,000 based on a comparative market analysis from another realtor and a contemporary Zillow[3] estimate.

The parties also disputed the purpose of a $36,000 loan that Richard had taken out against his 401(k) in January 2020. Richard contended that $9,000 of the loan was used to pay off student loans Kelsey had incurred before the marriage.[4] Kelsey argued that that Richard spent the money on himself, and claimed that there was no record of a $9,000 payment.

---

[2] This is the same realtor the parties hired to prepare an estimate in anticipation of their separation.

[3] Zillow is an American tech real-estate marketplace company.

[4] But it does not appear that Richard provided evidence of the $9,000 payment. The only exhibit concerning Kelsey's student loans shows a payment

The trial court entered its findings and final dissolution order on March 15, 2022. The court remarked that both parties were "in their 30s, healthy, and ha[d] work to support themselves." And though Kelsey "acquired more during the marriage[, Richard] brought more to the marriage" and both parties "contributed to the marital community." Therefore, the court found it fair to place each party in relatively equal financial circumstances "based upon retention of their separate property and division of the community property." The court awarded the home to Kelsey and found its value was between $311,000 and $430,000. The court ordered Kelsey to pay Richard $15,000 to cover his repayment of her student loans and to offset the award of the house. The court reasoned that this division was fair because of the $10,000 gift from Kelsey's parents and upgrades Kelsey had made on the home post-separation. Both parties were awarded their separate retirement accounts.

Richard moved for clarification and reconsideration of the final order, asking the court to revise its findings to "provide legally sufficient detail . . . to allow appellate review of the court's factual and legal basis for the ruling by setting values and determining the character of the parties' assets." He requested that the court set a discrete value for the house rather than a "vast range." He also asked the court to adopt his proposed valuation of $430,000 and to consider a newer broker's opinion, obtained after trial had concluded. Finally, he asked the court to clarify its intention to place the parties in "relatively equal

of $1,261.29 made on February 13, 2020 but does not show who paid that amount.

4

financial circumstances based upon retention of their separate property and division of the community property" or clarify that its intention was to "equalize the division of the community property."

The court nominally denied Richard's requests for both reconsideration and clarification. Despite this, the court proceeded to explain that it adopted the asset characterizations and valuations from one of Richard's exhibits. It then set the home's value at $295,000. The court noted that the characterizations and values allocated both community and separate property relatively equally, slightly favoring Richard because of the $15,000 offsetting payment. The court reiterated that both parties were "healthy" with "good employment prospects to support themselves" and had both "contributed equally during the marriage." It declined to consider Richard's updated broker's opinion because it was post-trial evidence and Richard had made no showing that the evidence could not have been provided at trial with due diligence.

Richard appeals.

ANALYSIS

Richard contends that the trial court erred by nominally denying his motions for clarification and reconsideration while also assigning the house a lower value, outside the range it previously provided. He also asserts that the court erred in awarding the marital home to Kelsey. Finally, he asserts that the court erred in not awarding him attorney fees.

We conclude that the court erred in characterizing its order as denying the motion for reconsideration and clarification, however we also conclude that the

5

court still acted within its authority to amend its earlier findings. We further conclude that the court did not abuse its discretion by awarding the marital home to Kelsey. Lastly, we conclude that the court failed to make sufficient findings of fact regarding its denial of Richard's request for attorney fees.

Motion to Clarify and for Reconsideration

Richard asserts that in response to his motion for clarification and reconsideration, the court improperly modified its findings rather than clarifying them. Kelsey contends that it is within the court's authority to amend findings on a motion for reconsideration.

The parties dispute the appropriate standard of review. Richard urges us to review the trial court's denial of his motion for clarification and reconsideration de novo because trial was via affidavit and therefore, the proceedings were "akin to [] summary judgment." Kelsey contends that it is irrelevant whether the trial court's decision was based on a documentary record as opposed to live testimony and that we should review the trial court's decision for abuse of discretion and its findings for substantial evidence. We agree with Kelsey.

A trial court's ruling on a motion for reconsideration or clarification is reviewed for abuse of discretion. City of Longview v. Wallin, 174 Wn. App. 763, 776, 301 P.3d 45 (2013) (reconsideration); In re Marriage of Christel and Blanchard, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000) (clarification). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

CR 52(b) permits the court to "amend its findings or make additional findings" on motion for reconsideration under to CR 59. Brossman v. Brossman, 32 Wn. App. 851, 856, 650 P.2d 246 (1982). On motion for clarification, however, the court can only define the parties' respective rights and obligations which have already been given. Christel, 101 Wn. App. at 22.

Here, Richard timely moved for clarification and reconsideration under CR 59. The trial court denied his motion for clarification and reconsideration but stated: "To clarify, the Court confirms that it adopted the asset characterizations contained in Respondent's Property Chart 2 [valuing the house at $295,000]."

On appeal, Richard claims that the court improperly "revised" its ruling rather than clarifying it. We partially agree. Though the trial court stated that it was clarifying its earlier findings and denying the motion for reconsideration, the court did, in fact, reconsider and amend its findings by setting a new value for the house, outside the range it previously stated in the findings of fact. But the court had the authority, under CR 52(b), to make additional findings of fact or amend its earlier findings. Therefore, the court did not abuse its discretion by amending its findings in response to Richard's motion. However, the court did err by mischaracterizing its order and should correct the order for clarity.

<u>Award and Valuation of House</u>

Richard raises a litany of issues about the court's award and valuation of the marital home. First, that the court erred in awarding the house to Kelsey. Second, that the court's valuation of the marital home was unsupported by substantial evidence. Third, that the house valuation was inequitable and that

the court's reasoning for its valuation was unsupported by the evidence. Fourth, that the court erred in not conducting a hearing on the motion for reconsideration and clarification. And fifth, that it was inequitable for the court to combine the parties' community and separate property and divide it equally. We disagree with each of his contentions and conclude that the court did not abuse its discretion in its award, valuation, or division of assets.

"A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." Littlefield, 133 Wn.2d at 46-47.

Where the trial court has weighed the evidence, as here, we must determine whether substantial evidence supports the court's findings of fact. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). If the court's findings of fact are supported by substantial evidence, they will not be disturbed on appeal. Rockwell, 141 Wn. App. at 242. " 'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), cert. dismissed, 479 U.S. 1050, 10 S. Ct. 940, 93 L. Ed. 2d 990 (1987)). We do not substitute our judgment for the trial court's or weigh the evidence on appeal. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

8

In dissolution proceedings, a trial court has broad discretion to make "just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). These factors include, but are not limited to: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080. "A just and equitable division 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties.' " In re Marriage of Larson and Calhoun, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013) (quoting In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)). The court is not required to place the parties in precisely equal financial positions at the moment of dissolution. Wright, 179 Wn. App. at 262. Moreover, the court's characterization of property as community or separate is not controlling in division of property between the parties. Brewer v. Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). "All property, both separate and community, is before the court" and subject to division. Brewer, 137 Wn.2d at 766. We address Richard's arguments in turn.

Awarding House to Kelsey: Richard asserts that the court erred in awarding the house to Kelsey because she makes "nearly double" his income and because the RCW 29.09.080 factors weigh in his favor. He also asserts that because he supported Kelsey during her firefighting classes with the expectation

of future financial benefit to the community, the court should have considered this circumstance a "relevant factor" in its division of assets. But in weighing the RCW 29.09.080 factors, the court did consider the parties' relative financial situations and how they each fared in the marriage. It reasoned that "[Kelsey] acquired more during the marriage; [Richard] brought more to the marriage" and that "[b]oth parties contributed to the marital community." And though Kelsey makes more than Richard now, Richard still had about $85,000 more in his retirement account than Kelsey at the time of separation.[5]

Richard's argument that he "end[ed] up in relative poverty while he pays off the 401(k) loan that largely paid off Kelsey's separate student loan debt" is unsupported by the record. Of the $36,000 that Richard borrowed, arguably only $9,000 went toward Kelsey's school loans.[6] But Kelsey must now pay Richard $15,000 as repayment for the loans. And Richard's assertion that the rest of the loan went toward other "community debt" is unsubstantiated. Though the record indicates that Richard has separate credit card debt, nowhere in his briefing, either here or before the trial court, does Richard provide additional detail about the alleged community debts. It was not an abuse of discretion for the court to award the house to Kelsey.

---

[5] This figure accounts for both Kelsey's deferred compensation plan and LEOFF.

[6] Though the court ordered Kelsey to pay Richard $9,000 for the "loan [he] took from his 401k account to pay [Kelsey]'s student loans," it did not make a finding that Richard had actually paid Kelsey's student loans. The trial exhibits designated on appeal do not clarify whether such a payment was made. Kelsey also disputes that Richard made this payment.

Evidence Regarding Valuation of the House:  Richard's contention that the court did not base its valuation of the house on substantial evidence is contrary to the record.  Both parties stipulated to their trial exhibits being admitted into evidence and both parties submitted exhibits that listed the house's valuation at $295,000.  Richard's Exhibit 53, a proposed property division chart, listed the house's value as $295,000.  And Kelsey's Exhibit 12, a realtor report on the estimated proceeds of the home, also listed the house's value as $295,000.

Richard asserts that Kelsey's Exhibit 12 is merely "illustrative or demonstrative evidence" and not "evidence of the values" in the report is unpersuasive.  But Richard stipulated that "[a]ll other exhibits [except Exhibit 36 and 72] submitted by the parties [were . . . ] admissible."  The stipulation did not provide that some exhibits would be illustrative only.  Richard cannot now attempt to limit the use of evidence whose full admission he not only failed to object to, but affirmatively agreed to.  See State v. Grier, 168 Wn. App. 635, 643, 278 P.3d 225 (2012) (unpreserved evidentiary challenges cannot be raised for the first time on appeal).

Valuation of the House:  Richard asserts that it was not equitable for the court to set the value of the house at $295,000 because the court did not make a finding at trial that the home was worth that amount.  He contends that only he provided a professional valuation of the home, which the court should have used.  He also claims that there is no evidence to support the court's reasoning for why the valuation was equitable.

But the court did make a finding that the house was worth $295,000 in its order denying clarification and reconsideration. And, as previously discussed, the court may amend its findings or make additional findings as permitted by CR 52(b).

Further, the trial court has wide discretion in valuing assets and may consider all relevant facts and circumstances. In re Marriage of Hay, 80 Wn. App. 202, 204, 907 P.2d 334 (1995). Here, there was evidence to support a valuation of $295,000. Both Kelsey and Richard submitted exhibits, which were admitted as evidence, valuing the house at $295,000. This is sufficient.

Division of Community and Separate Property: Richard contends that it was inequitable for the court to combine community and separate property together and divide it equally among the parties. But as Richard concedes, the character of the property is not controlling in its division. And Richard's rehash of his argument that the division was inequitable because the house's value was unsupported by evidence and favored Kelsey is unconvincing. As the trial court noted, it followed Richard's proposed asset valuation, which "allocated both community and separate property to arrive at a relatively equal distribution, slightly favoring [Richard] due to a $15,000 transfer payment from [Kelsey] to [Richard]."[7]

---

[7] Richard claims that the valuation was produced for merely "illustrative purposes[,] using what Kelsey claimed the residence was worth at the time of the separation." But the trial court is not bound by Richard's intent.

Attorney Fees

Both parties assert that they should recover attorney fees and costs at trial and on appeal as allowed by RCW 26.09.140 and RAP 18.1. Because the court failed to make adequate findings of fact concerning the denial of attorney fees, the record is insufficient for us to determine why fees were denied. We therefore vacate the order denying and remand for the court to determine the issue of attorney fees and make findings of fact. We decline to award fees on appeal and reserve this issue for the trial court to determine whether either party is entitled to fees and costs incurred on appeal.

1. Fees at Trial

We review a denial of attorney fees for an abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 676, 239 P.3d 557 (2010). The party challenging the award must show that the court's decision is untenable or manifestly unreasonable. In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71 (1994).

The trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 144, 331 P.3d 40 (2014); see also In re Marriage of Obaidi and Qayoum, 154 Wn. App. 609, 618, 226 P.3d 787 (2010) (reversal warranted where court did not provide method and relevant figures used to calculated fee award). "The findings must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman v. Metcalf, 177 Wn. App. 644, 658, 312 P.3d 745

(2013). If the court fails to do so, we will vacate the judgment and remand for a new hearing to gather adequate information and for entry of specific findings of fact and conclusions of law concerning an attorney fee award. In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006).

RCW 26.09.140 permits the court to award reasonable attorney fees and costs in considering the financial resources of both parties. In deciding whether to award attorney fees, the court must balance the needs of the party requesting fees against the ability of the opposing party to pay the fees. In re Marriage of Anthony, 9 Wn.App.2d 555, 568, 446 P.3d 635 (2019). But the court may also award fees based on a finding of intransigence. Wixom v. Wixom, 190 Wn. App. 719, 725, 360 P.3d 960 (2015). " 'Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions.' " Bay v. Jensen, 147 Wn. App. 641, 660, 196 P.3d 753 (2008) (quoting Bobbitt, 135 Wn. App. at 30).

Here, the court's findings of fact and conclusions of law are insufficient to permit review of its denial of attorney fees. In its findings and conclusions, the court did not find that either party was intransigent. Therefore, it concluded that "due to the length of the marriage, the division of property, and each party's financial circumstance going forward, each [party] shall bear his or her own attorney fees and costs." But though the court hinted at its method for determining fees were inappropriate, the record does not give us all the relevant figures. Missing from the record is consideration of the parties' disparate incomes and how such disparity affected the court's need versus ability to pay

analysis. Richard testified that he incurred over $12,000 in attorney fees and makes about $64,000 annually. Kelsey testified that she incurred about $20,000 in attorney fees and makes around $112,000 annually. And despite concluding that the division of real property, personal property, and debt was "fair," the court did not address how it came to this conclusion. Moreover, after the court modified its valuation of the house, it needed to revisit its earlier findings and its conclusion that neither party was entitled to attorney fees. Without findings and conclusions specifically addressing the parties' need versus ability to pay fees, we cannot determine whether the court abused its discretion in denying the parties' request for attorney fees. Given the lack of specific findings and in light of the parties' apparently disparate financial circumstances, the record is insufficient to permit review.

2. <u>Fees on Appeal</u>

On appeal, RAP 18.1(a) permits an award of attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." Under RCW 26.09.140, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs."

Our decision to remand for a redetermination of whether the parties were entitled to fees at trial requires us to reserve the issue of attorney fees on appeal. See <u>In re Marriage of Terry</u>, 79 Wn. App. 866, 871, 905 P.2d 935 (1995) (award of fees on appeal was premature where trial court needed to reconsider property division on remand). If, after considering all relevant factors, the trial court

determines that one spouse has a need for an attorney fee award and the other has the ability to pay, the first spouse will be entitled to fees and costs incurred on appeal as well.  <u>Terry</u>, 79 Wn. App. at 871.

We vacate the provision in the order denying fees and remand for the court to correct its order to reflect that it reconsidered the value of the home and to make findings of fact and a determination of attorney fees at trial and on appeal.

Smith, A.C.J.

WE CONCUR:

Birk, J.          Andrus, C.J.